SOUTHERN HOME, The (BRAUER v.). See Case No. 13,187.

SOUTHERN LIFE INS. CO. (KNOTT v.). See Case No. 7,894.

## Case No. 13,188.

In re SOUTHERN MINN. R. CO.

[10 N. B. R. (1874) 86.] [1]

District Court, D. Minnesota.

BANKRUPTCY—CORPORATIONS—COMMERCIAL PAPER

1. A railway corporation may be adjudged bankrupt for failure to pay its commercial paper within the period prescribed by the act [of 1867 (14 Stat. 517)].

2. An obligation given by an officer of a corporation, signing his own name and affixing his official position as descriptio personæ, may be shown by parol to be the obligation of the corporation.

The petition of Danforth W. Blanchard and Samuel D. Arnold, as partners, was filed, praying that the Southern Minnesota Railroad Company be adjudicated a bankrupt. The corporation made a motion to dismiss the petition on exceptions filed to the petition.

G. E. Cole, for petitioners.
Bigelow, Flandrau & Clark, H. J. Horn, and Gilfillan & Williams, for respondent.

NELSON, District Judge. The company files exceptions to the allegations of the petition, charging acts of bankruptcy, and asks that the proceedings be dismissed. It is alleged that this corporation, being a railroad company, is not amenable to the bankrupt law.

I think the decision of Judge Clifford, in the first circuit, in the case of Sweatt v. Boston, H. & E. R. Co. [Case No. 13,684], fully establishes the character of such companies as commercial corporations, and affirms the jurisdiction of the district courts in bankruptcy over them. The circuit court, in this district, has followed this decision in the case of Winter v. Iowa, M. & N. P. R. Co. [Id. 17,890]. The petition charges as one act of bankruptcy, that this company, being insolvent, did make a sale, gift, or transfer of certain property, rights, privileges, and franchises, with intent to delay, hinder, and defraud the creditors of the corporation. This is certainly, under the bankrupt law, if true, an act of bankruptcy; but it is claimed that the specific act or acts as they appear set forth in detail, do not sustain the sweeping charge preferred.

Briefly, the petition charges that the Southern Minnesota Railroad Company, by act of the legislature of the state of Minnesota, approved March 4, 1864 [Sp. Laws 1864, p. 148], was authorized to create and issue in such manner and on such terms as it might deem expedient, special stock on any part of its railroad or branches, and to make such arrangement as it might deem proper with the holders of any special stock for the appropriation of the net earnings of any portion of the said road which it may construct or otherwise acquire to the payment of dividends on such special stock as may be issued in respect

[1] [Reprinted by permission.]

thereto; which appropriation, as made by such agreement, shall be effectual to secure to the said and future holders of said stock the application of such net earnings as in the said agreement provided, against any future act of said company or any of its general liabilities, and that the company might make such agreements as it might deem proper with the holders of any such special stock as to the administration of the portion of said railroad and the land grant appertaining thereto, to which the special stock might pertain, or for the separate organization of the stockholders, and enabling them, or directors chosen by them, to exercise all the powers of said company in respect to the portion of the road to which such special stock may pertain, etc.

It is also alleged, that among the valuable rights, properties, and franchises held and owned by the company, it has the right to construct and operate a railroad bridge across the Mississippi river, and to extend its track over the same, so as to connect its road with La Crosse, and with railroads running thence east; that the right to construct this bridge, etc., was conferred by act of congress, February 21, 1868 [15 Stat. 37], and by act of the legislature of Minnesota, March 5, 1868 [Sp. Laws 1868, p. 2], and by act of the legislature of the state of Wisconsin, approved April 8, 1867 [Laws Wis. p. 947]. It is charged that the company, being insolvent, on July 23, 1873, did transfer and assign, with intent to hinder, delay, and defraud creditors, the franchise of constructing and operating this railroad bridge, and did create and issue to certain persons named in the petition, to their use, and that of their survivors and their associates, special stock upon so much of its railroad and appurtenances as should comprise the bridge so authorized to be built and the railroad over the same, and all proper and necessary approaches on each side of the river, with the machinery, rolling stock, fixtures, franchises, appurtenances, and other real or personal property belonging to, or which may hereafter belong to the same, to the amount of one million of dollars, consisting of ten thousand shares of one hundred dollars each; and also that the company did make an agreement with the grantees and special stockholders, conferring upon them all the rights specified in the act of the legislature of the state of Minnesota, of March 4, 1864, in regard to separate organization, etc. It is further charged that this assignment, conveyance, and agreement, were without consideration, and were made wholly for the benefit of the president of the company, and to enable him to hold the franchise, as set forth above, free and clear of all debts or claims against the company.

Now, without examining the petition further, I think, that conceding the truth of the matters above stated, the corporation has committed an act of bankruptcy. The creation of special stock, and the transfer of the same, with all the privileges granted to the company by the act of March 4, 1864, was a valuable right and property, and conferred the authority to exercise a certain unincumbered franchise which it was not possible for any one but the company to do, except when transferred by it in accordance with the above act of the legislature. The transfer and assignment carried with them all the rights and benefits resulting from a contract which the company had entered into, and to which the trustees of the bondholders, and the receiver in possession of the road, were granted permission, by the United States circuit court of this district, to become parties, so far as to bind the interests represented by them under certain mortgages issued upon the road; which contract makes any final decree for a foreclosure subject thereto. The effect of the agreement was to exempt this property by the express terms of the act from the general liabilities of the company, and place it to that extent beyond the reach of creditors. While it may be conceded that the naked franchise to build a railroad or a railroad bridge cannot be reached by an execution issued upon a judgment obtained in an action at law, it by no means follows that where the right to transfer such franchise has been granted by the legislature, it is impossible for a court to compel their subjection to the just demands of creditors, when an appeal is made to its equitable powers. But inasmuch as the corporation is subject to all the provisions of the bankrupt act, it is certainly possible for the district court, or the register, to make a transfer of all of its property, including its franchises, and administer its assets in the same manner as is provided in respect to natural persons.

In regard to the point urged that it does not appear that the petitioners are creditors of the corporation, for the reason that they aver that their demand is on a certain promissory note, which upon its face is not the note of the corporation, but of one Benjamin G. Lennox, although he signs himself as secretary and acting treasurer of the Southern Minnesota Railroad Company, I think it will be found that the rule is settled by the supreme court of the United States, in several well-considered cases, that parol evidence is admissible to show that a note executed by an officer of a corporation was intended as the promise of the corporation, and that he acted within the sphere of his duty,—[Mechanics' Bank of Alexandria v. Bank of Columbia] 5 Wheat. [18 U. S.] 326; [Baldwin v. Bank of Newbury] 1 Wall. [68 U. S.] 241, and cases cited,—and that in such cases a suit may be maintained in the name of or against the corporation, as the case may be. The exceptions are therefore overruled and the motion to dismiss denied.